## DEEVES v. RICHARDSON & BOYNTON CO.

(*Superior Court of New York City, General Term.* May 4, 1891.)

**DAMAGES—BREACH OF CONTRACT.**

Defendant agreed to furnish and set 63 lines of hot-air pipe for $248 in a building, the contract to erect which had been awarded to plaintiff. Afterwards defendant refused to perform its contract, on the ground that it had made a mistake in calculating the number of feet of pipe required; whereupon plaintiff procured from M., a third person, an estimate by which M. agreed to furnish the 63 lines of pipe for $614, or to furnish 41 lines of pipe, as called for by a change in the architect's plans made after defendant's proposal, for $402; and the 41 lines were furnished and set by M. according to such changed plans. *Held*, that plaintiff was entitled to recover from defendant for its breach of contract only the difference between defendant's bid of $248 and $402, the amount actually paid for the pipe, and he was not entitled to recover the difference between M.'s estimate for 63 lines of pipe ($614) and defendant's bid of $248.

Appeal from special term.

Action by Richard Deeves against Richardson & Boynton Company to recover for breach of contract. Defendant appeals from judgment entered on verdict for plaintiff, and from order denying motion for new trial.

Argued before SEDGWICK, C. J., and FREEDMAN, J.

*Arnold & Green,* for appellant. *David Thornton,* for respondent.

PER CURIAM. The plaintiff was a mason builder. He was about to make a bid for the building of the Eastern Dispensary. Before putting in that bid he procured from the defendant a proposal as to furnishing 61 lines of hot-air pipes to the building, and setting them in its walls. The defendant wrote to the plaintiff that it would furnish and set hot-air pipes in the wall of the dispensary for $208, which was afterwards changed to $248. Upon receiving this proposal, the plaintiff accepted it in writing. The defendant, for the purpose of making the proposal, had been referred, in order to know the quantity of work that was to be done, to plans and specifications made by architects for the building. When the proposal was made it was understood that 63 lines of pipe were to be furnished. After the acceptance by the plaintiff, the defendant endeavored to withdraw the estimate, on the ground that there had been a mistake on its part in calculating the number of feet of pipe that was to be furnished. There can be no doubt that, upon the plaintiff accepting the proposal, there was a contract obligatory on both parties. The attempt to withdraw the estimate by defendant, after the acceptance, was ineffectual. If there was a question on this point, the defendant did not ask that it be decided by the jury. The defendant made a defense that the contract was to be set aside because of a mistake made by it in framing its proposal. The mistake did not refer to the form or words of the proposal, but in calculating as asserted the number of feet of pipe. Several things might be said of this. It may be sufficient to say that the so-called mistake was the result of inexcusable negligence, which the plaintiff did not induce or participate in. Such a mistake is not the ground of equitable interference. The defendant withdrawing the estimate, and not performing, as it did not, the question remains as to the damages the plaintiff was entitled to recover. The contract was special in its character, and one of purchase and sale. This was known to both parties. The pipe was not to become the property of the plaintiff, and it would become, when the contract was performed, the property of the owners of the dispensary. The benefit, as disclosed by plaintiff's evidence, would be such as would accrue to the plaintiff from his making his bid in part upon defendant's estimate, and, the bid being accepted by the dispensary, his being able to perform that part of the work at the expense of paying the sum fixed by defendant's contract. The plaintiff testified that upon the defendant's estimate in fact he made his bid for the contract, which was afterwards awarded to him. The contract provided that the owner should be at liberty to make any alteration, addition, or omission in, to, or from the contract, and the same should in no way avoid the contract, but would be added to or deducted from the contract, by a fair and reasonable valuation. The plaintiff recognized that what was furnished was to be furnished according to the architect's plan and specification. In accepting defendant's estimate, he wrote: "I hereby accept your estimate," etc. "All to be done according to plans and specifications as made by Messrs. Rose & Stone, architects, and to their satisfaction." From the nature of the benefit the plaintiff was to receive from defendant's contract, it is manifest that, if the work were done for a less sum than he was to pay the defendant, there would be no loss or damage, or, if the work cost a greater sum, he would be compensated by receiving the excess of it beyond that to be paid to defendant. He was obliged to pay a greater sum, which entitled him to a recovery, but not for the sum of the damages awarded below. After defend-

ant's breach, the plaintiff procured the following estimate from the Mott Iron-Works: "We will furnish for Eastern Dispensary," etc., "41 lines of square heating pipe," etc., "as per flue section submitted by Rose & Stone, architects, for $402. If dispensary should be piped as per specifications of Mr. Richard Deeves, calling for 63 lines of pipe, the estimate will be $614." In fact, the architect had changed the plans so as to call for only 41 lines of pipe; and these were furnished and set by the Mott Iron-Works at a cost to plaintiff of the sum named in the estimate, $402. He was therefore damaged only in the difference between this sum and the amount of defendant's bid, viz., $248, and a due compensation, to be assessed by the jury, for trouble and work in obtaining the new bid. He was not entitled to a recovery on a basis of a cost of $614, made upon the specification of the plaintiff, by the Mott Iron-Works. The 63 lines of pipe were not called for by reason of a change made in the architect's plan, as permitted by the clause of the plaintiff's contract with the owners that has been cited; and the fact that the defendant agreed to furnish more pipe than was actually used, and did not furnish it, did not injure plaintiff, for it did not affect the sum plainly received for building. It did not cause the plaintiff to change his bid, and there was no proof of the effect, under the clause allowing the owner to change the work to be done, of 41 lines of pipe being used instead of 63 lines. By the contract in suit the pipes that might be furnished and set or those not used were not to be delivered to the plaintiff, and to be his property. If the phrase in plaintiff's acceptance, "all to be done according to plan," etc., "of Messrs. Rose & Stone, architects, and to their satisfaction," were not inconsistent with defendant's promise to furnish and set 63 lines, then the implication was that the plaintiff would see that an opportunity was given to the defendant to set 63 lines of pipe. An omission so to provide would be a breach by plaintiff. The change in the number that was made, was made, as we have seen, by a contract that existed at the time of plaintiff's acceptance. The plaintiff cannot claim a loss on account of something that would be a breach on his part; that is, the defendants could not have set the excess of 21 pipes by reason of the breach of the condition precedent to furnish place and opportunity for them to be set. For these reasons the plaintiff was not entitled to recover the difference between defendant's bid and $614. Nothing was lost by defendant's breach beyond the difference between bid $248, and the bid of the Mott Iron-Works, $402. The amount he would receive as his contract, which comprised his whole interest, was not lessened, except this difference. As the contrary view was upheld at the trial, there should be a reversal. Judgment and order appealed from reversed, and new trial ordered, with costs to abide the event.